IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| STATE FARM FIRE & CASUALTY COMPANY, | ) ) ) Civ. No. 10-00052 HG-KSC |
| Plaintiff, | ) ) ) |
| vs. | ) ) ) |
| STEVE WILLISON and THITIRAT CHAROEN, | ) ) ) |
| Defendants. | ) ) ) |
| _____ | ) ) |
| STEVE WILLISON and THITIRAT CHAROEN, | ) ) ) |
| Counter Claimants, | ) ) ) |
| vs. | ) ) ) |
| STATE FARM FIRE & CASUALTY COMPANY, | ) ) ) |
| Counter Defendant. | ) ) ) |
| _____ | ) |

**ORDER GRANTING PLAINTIFF STATE FARMS FIRE & CASUALTY COMPANY'S
MOTION FOR SUMMARY JUDGEMENT (DOC. 18)
AND
DISMISSING DEFENDANTS' COUNTERCLAIM (DOC.9) AS MOOT**

Plaintiff State Farm Fire & Casualty Company brings a
declaratory judgment action against Defendants Steve Willison and
Thitirat Charoen to determine State Farm's duty to defend or
indemnify Defendants in a California state court case pursuant to
two State Farm insurance policies.  The underlying lawsuit has
ten causes of action against the Defendants alleging the

1

diversion of funds in the construction of three homes on the island of Maui in the State of Hawaii.

Plaintiff moves for summary judgment. Plaintiff argues that there is no coverage under the two State Farm insurance policies for the claims raised in the underlying lawsuit. The Court agrees. The Plaintiff does not have a duty to defend or indemnify the Defendants in the underlying lawsuit. The causes of action and damages sought in the underlying lawsuit are not covered by either of the Policies.

PLAINTIFF STATE FARM FIRE & CASUALTY COMPANY'S MOTION FOR SUMMARY JUDGMENT, filed on November 22, 2010, (Doc. 18) is **GRANTED**.

Defendants' "COUNTERCLAIM" (Doc. 9) filed on March 9, 2010 is **DISMISSED AS MOOT**.

## PROCEDURAL HISTORY

On January 27, 2010, Plaintiff filed "COMPLAINT FOR DECLARATORY JUDGMENT" (Doc. 1).

On March 9, 2010, Defendants filed "DEFENDANTS STEVE WILLISON AND THITIRAT CHAROEN'S ANSWER TO COMPLAINT FOR DECLARATORY JUDGMENT FILED JANUARY 27, 2010" and a Counterclaim against Plaintiff (Doc. 9).

On November 22, 2010, Plaintiff filed "PLAINTIFF STATE FARM FIRE & CASUALTY COMPANY'S MOTION FOR SUMMARY JUDGMENT" (Doc. 18).

On December 7, 2010, per counsels' request, the hearing set for February 15, 2011 was continued until March 29, 2011. (Minute Entry, December 7, 2010, (Doc. 22).)

On March 2, 2011, per counsels' request, the hearing set for March 29, 2011 was continued until May 17, 2011. (Minute Entry, March 2, 2011, (Doc. 28).)

On April 22, 2011, the Court granted Defendants' request to continue the hearing set for May 17, 2011 to June 24, 2011. (Minute Entry, April 22, 2011, (Doc. 29).)

On May 10, 2011, Defendants filed "MOTION TO WITHDRAW AS COUNSEL OF RECORD" (Doc. 33).

On May 13, 2011, Plaintiff filed "PLAINTIFF STATE FARMS FIRE & CASUALTY COMPANY'S STATEMENT OF NO POSITION RE: MOTION TO WITHDRAW AS COUNSEL FO RECORD, FILED MAY 10, 2011" (Doc. 37).

On May 19, 2011, the Magistrate Judge granted Defendants' Motion to Withdraw as Counsel of Record.  (Order Granting Motion to Withdraw as Counsel of Record, filed May 19, 2011 (Doc. 41).) Defendants elected to proceed *pro se*.

On June 9, 2011, nineteen days after the deadline for filing an Opposition to Plaintiff's Motion for Summary Judgement, Defendants sent an email to the Courtroom Manager requesting until June 10, 2011 to make two filings in the matter.

On June 9, 2011, the Court granted Defendants's request to make their filings by June 10, 2011.  (Minute Order, filed June

9, 2011 (Doc. 43).)

On June 10, 2011, Defendants filed "RESPONSE DECLARATORY
JUDGMENT SUMMONS; REQUEST CONTINUANCE; CHANGE OF ATTORNEY - PER
SE [sic]" (Doc. 44).

On June 24, 2011, this matter came on for hearing and the
Court ruled from the bench.  This Order memorializes the Court's
June 24, 2011 ruling.


**BACKGROUND**

This suit concerns the coverage of two insurance policies
issued by Plaintiff State Farm Fire & Casualty Company
(hereafter, "Plaintiff").  The first policy is a State Farm
Homeowners Policy (hereafter "Homeowners Insurance Policy") for a
residence located at 368 Wekiu Place, Lahaina, Hawaii. (State
Farm Homeowners Policy, No. 51-BW-3140-4, Plaintiff's Separate
and Concise Statement of Undisputed Facts, Declaration of
Jennifer Wilson, Ex. A (hereafter "Homeowners Insurance Policy")
(Doc. 19).)  The Policy was issued to Defendant Steve Willison.
(Id. at 1)  The parties do not dispute that the Homeowners
Insurance Policy was in effect at all relevant times.

The second policy is a State Farm Renters Policy (hereafter
"Renters Insurance Policy") for a residence located at 764
Anapuni Loop, Lahaina, Hawaii.  (State Farm Renters Policy, 51-
BB-T467-8, Plaintiff's Separate and Concise Statement of

Undisputed Facts, Declaration of Jennifer Wilson, Ex. B
(hereafter "Renters Insurance Policy") (Doc. 19).) The Policy
was issued to Defendants Steve Willison and Thitirat Charoen
(hereafter "Defendants"). (Id. at 1.) It is undisputed that the
Renters Insurance Policy went into effect on October 16, 2009 for
the period of one year. (Id.)

On April 14, 2009, James Greulich and Joshua Schwartz
(hereafter "Underlying Lawsuit Plaintiffs") filed a lawsuit
against Defendants in the Superior Court of the State of
California, County of Orange (hereafter "Underlying Lawsuit").
(Greulich, et al v. Willison, et al, Case No. 30-2009-00121541
(Cal. Sup. Ct. April 14, 2009), Plaintiff's Separate and Concise
Statement of Undisputed Facts, Declaration of Jennifer Wilson,
Ex. C (hereafter "Underlying Complaint") (Doc. 19).) The
Underlying Lawsuit alleges that, in 2005 and 2006, Defendants
contracted with the Underlying Lawsuit Plaintiffs to construct
three homes on the island of Maui in the State of Hawaii. (Id. at
¶¶ 12-23.) The Underlying Lawsuit alleges that Defendants
overcharged substantial sums in the construction of the three
homes and misappropriated materials and labor toward the
construction of their own home. (Id.) The Underlying Lawsuit
raises ten state and federal causes of action against the
Defendants: (1) Breach of Fiduciary Duty; (2) Constructive Fraud;
(3) Promissory Fraud; (4) Violation of the Unfair Trade Practices

Act; (5) Constructive Trust; (6) Accounting; (7) Conversion; (8) Breach of Contract; (9) Violations of the Racketeer Influenced and Corrupt Organizations Act (hereafter "RICO"); and (10) Negligence. (Id. at ¶¶ 24-69) The Underlying Lawsuit prays for general, special, consequential, and punitive damages, preliminary and injunctive relief, constructive trust, accounting, treble damages, and attorneys' fees.

Defendants tendered defense of the Underlying Lawsuit to Plaintiff pursuant to the Homeowner and Renters Insurance Policies. (Plaintiff's Separate and Concise Statement of Undisputed Facts, Declaration of Jennifer Wilson at ¶ 7 (Doc. 19).) The Policies each provide personal liability coverage up to $300,000.00 for each occurrence subject to specific exclusions. (Homeowners Insurance Policy at 3; Renters Insurance Policy at 3.) Defendants argue that pursuant to the Policies' personal liability coverage, Plaintiff State Farm owes a duty to defend and indemnify the Defendants in the Underlying Lawsuit. Plaintiff elected to defend the Defendants subject to a reservation of rights. Plaintiff moves, pursuant to Federal Rule of Civil Procedure 56, for a declaratory judgment that the Plaintiff does not owe a duty to defend or indemnify the Defendants in the Underlying Lawsuit filed on April 14, 2009.

**STANDARD OF REVIEW**

**I.    SUMMARY JUDGMENT**

Summary judgment is appropriate when there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c).  To deny summary judgment, there must be sufficient evidence that a reasonable jury could return a verdict for the nonmoving party. Nidds v. Schindler Elevator Corp., 113 F.3d 912, 916 (9th Cir. 1996).

The moving party has the initial burden of identifying for the court the portions of the materials on file that it believes demonstrate the absence of any genuine issue of material fact. T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n, 809 F.2d 626, 630 (9th Cir. 1987) (citing Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986)).  The moving party, however, has no burden to negate or disprove matters on which the opponent will have the burden of proof at trial.  The moving party need not produce any evidence at all on matters for which it does not have the burden of proof.  Celotex, 477 U.S. at 325.  The moving party must show that there is no genuine issue of material fact and that he or she is entitled to judgment as a matter of law.  That burden is met simply by pointing out to the district court that there is an absence of evidence to support the nonmovant's case. Id.

If the moving party meets its burden, then the opposing
party may not defeat a motion for summary judgment in the absence
of probative evidence tending to support its legal theory.
Commodity Futures Trading Comm'n v. Savage, 611 F.2d 270, 282
(9th Cir. 1979).  The opposing party must present admissible
evidence showing that there is a genuine issue for trial.  Fed.
R. Civ. P. 56(e); Brinson v. Linda Rose Joint Venture, 53 F.3d
1044, 1049 (9th Cir. 1995).  If the evidence is merely colorable,
or is not significantly probative, summary judgment may be
granted.  Nidds, 113 F.3d at 916 (quoting Anderson v. Liberty
Lobby, Inc., 477 U.S. 242, 249-50 (1986)).

The court views the facts in the light most favorable to the
non-moving party.  State Farm Fire & Casualty Co. v. Martin, 872
F.2d 319, 320 (9th Cir. 1989).

Opposition evidence may consist of declarations, admissions,
evidence obtained through discovery, and matters judicially
noticed.  Fed. R. Civ. P. 56(c); Celotex, 477 U.S. at 324.  The
opposing party cannot, however, stand on its pleadings or simply
assert that it will be able to discredit the movant's evidence at
trial.  Fed. R. Civ. P. 56(e); T.W. Elec. Serv., 809 F.2d at 630.
The opposing party cannot rest on mere allegations or denials.
Fed. R. Civ. P. 56(e); Gasaway v. Northwestern Mut. Life Ins.
Co., 26 F.3d 957, 959-60 (9th Cir. 1994).  Nor can the opposing

party rest on conclusory statements.  <u>National Steel Corp. v.</u>
<u>Golden Eagle Ins. Co.</u>, 121 F.3d 496, 502 (9th Cir. 1997).


**II.  LEGAL STANDARD FOR DUTY TO DEFEND OR INDEMNIFY UNDER HAWAII
LAW**

Hawaii adheres to the 'complaint allegation rule.'"
<u>Burlington Ins. Co. v. Oceanic Design & Constr., Inc.</u>, 383 F.3d
940, 946 (9th Cir. 2004).  The duty to defend is limited to
situations where the underlying pleadings have alleged a claim
for relief that falls within the terms for coverage of the
insurance contract.  <u>Id.</u>  The Court looks to the language of the
insurance policy involved to determine the scope of the insurer's
duty.  <u>Sentinel Ins. Co., Ltd. v. First Ins. Co. of Hawaii, Ltd.</u>,
875 P.2d 894, 904 (Haw. 1994).

The Hawaii Supreme Court has held that "because insurance
policies are contracts of adhesion and are premised on standard
forms prepared by the insurer's attorneys, we have long
subscribed to the principle that they must be construed liberally
in favor of the insured and [any] ambiguities [must be] resolved
against the insurer."  <u>Allstate Ins. Co. v. Ponce</u>, 99 P.3d 96,
108-09 (Haw. 2004) (citations and quotations omitted).  Absent
ambiguity, the terms of the policy are interpreted according to
their plain, ordinary, and accepted sense in common speech.  <u>Oahu</u>
<u>Transit Serv., Inc. v. Northfield Ins. Co.</u>, 112 P.3d 717, 722 n.7

(Haw. 2005) (quoting Haw. Ins. & Guaranty Co. v. Chief Clerk of First Circuit Court, 713 P.2d 427, 431 (Haw. 1986)).

The duty to defend is broader than the duty to indemnify. See Sentinel Ins. Co., Ltd., 875 P.2d at 904. The duty to defend "rests primarily on the possibility that coverage exists. This possibility may be remote, but if it exists, the [insurer] owes the insured a defense." Id. (citing Standard Oil Co. of Cal. v. Haw. Ins. & Guar. Co., Ltd., 654 P.2d 1345, 1349 (Haw. 1982)) (emphasis added). Questions regarding whether a duty to defend exists are resolved against the insurer and in favor of the insured. Sentinel Ins. Co., Ltd., 875 P.2d at 904. (citations omitted).

In determining whether an insurer has a duty to defend an insured in an underlying lawsuit, the court focuses on the alleged claims and facts of the underlying complaint. CIM Ins. Corp. v. Masamitsu, 74 F. Supp. 2d 975, 985 (D. Haw. 1999) (citing Allstate Ins. Co. v. Hui, 57 F. Supp. 2d 1039, 1043 (D. Haw. 1999) (quoting Commerce & Indus. Ins. Co. v. Bank of Haw., 832 P.2d 733 (Haw. 1992)). An insurance company has an obligation to investigate and determine whether an underlying lawsuit raises a potential for coverage and implicates its duty to defend. CIM Ins. Corp., 74 F. Supp. 2d at 985.

"When the facts alleged in the underlying complaint unambiguously exclude the possibility of coverage, conclusory

10

assertions contained in the complaint . . . are insufficient to trigger the insurer's duty to defend." <u>Dairy Road Partners v. Island Ins. Co.</u>, 992 P.2d 93, 112 (Haw. 2000).  The underlying complaint must allege facts that would plausibly give rise to a cause of action covered by the insurance policy.  <u>Bayudan v. Tradewind Ins. Co.</u>, 957 P.2d 1061, 1062 (Haw. App. 1998) (no duty to defend because all of claims and alleged injuries in underlying complaint were inherently related to the kidnaping and assault claim, which insured admitted was not covered by his insurance policy).

**ANALYSIS**

## I.   DEFENDANTS' MOTION TO CONTINUE PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT IS DENIED

The Court retains "broad discretion" in deciding whether to grant a continuance.  <u>United States v. Kloehn</u>, 620 F.3d 1123, 1126 (9th Cir. 2010) (quoting <u>United States v. Flynt</u>, 756 F.2d 1352, 1358 (9th Cir. 1985), amended by, 764 F.2d 675 (9th Cir. 1985)).  The decision to grant or deny a motion to continue is dependant upon the circumstance of the case.  <u>Kloehn</u>, 620 F.3d at 1126 (quoting <u>Ungar v. Sara-fite</u>, 376 U.S. 575, 589 (1964)).  The Ninth Circuit Court of Appeals has outlined four considerations that the Court must evaluate in deciding whether to grant a motion to continue: (1) the "diligence" of the party seeking the continuance; (2) whether granting the continuance would serve any

useful purpose; (3) the extent to which granting the continuance would have inconvenienced the court and the opposing party; and (4) the potential prejudice. <u>Flynt</u>, 756 F.2d at 1358; <u>Kloehn</u>, 620 F.3d at 1126-1127.

The factors in this case weigh in favor of denying Defendants' motion to continue.

**(1) Diligence**

Plaintiff's Motion for Summary Judgement, filed on November 22, 2010 has been pending for over seven months. Originally, the Motion for Summary Judgment was set for hearing on February 15, 2011 at 10:00 a.m. with the Opposition to be filed by December 7, 2010.

On December 7, 2010, however, Defendants' Attorney Matthew Pietsch sent a letter to the Court requesting a continuance on the Plaintiff's Motion for Summary Judgment until March 28, 2011 and an extension of time to file an Opposition. (Letter from Matthew V. Pietsch, dated December 7, 2010 (Doc. 21).) In the letter, Defendants's Attorney stated that the hearing date of February 15, 2011 conflicted with a previously scheduled evidentiary hearing in state court for a different matter. (<u>Id.</u>) The letter stated that the Plaintiff agreed to the continuance. (<u>Id.</u>) Defendant Willison was copied on the letter. (<u>Id.</u>)

On December 7, 2010, the Court granted Defendants' request. (Minute Entry, December 7, 2010, (Doc. 22).) The hearing set for

February 15, 2011 was continued until March 29, 2011 at 10:00 a.m.  Pursuant to Local Rule 7.4, Defendants had until March 8, 2011 to file an Opposition to Plaintiff's Motion for Summary Judgment.

On March 2, 2011, per counsels' request, the hearing set for March 29, 2011 was continued until May 17, 2011 at 11:00 a.m. (Minute Entry, March 2, 2011, (Doc. 28).)  At the hearing on June 24, 2011, Plaintiff's Counsel indicated the agreed continuance was requested by the Defendants.  Pursuant to Local Rule 7.4, Defendants had until April 26, 2011 to file an Opposition to Plaintiff's Motion for Summary Judgment.

On April 20, 2011 Defendants' Attorney Matthew Pietsch a letter to the Court requesting a third continuance of the Motion for Summary Judgment.  (Letter from Matthew V. Pietsch, dated April 20, 2010 (Doc. 31).)  The letter stated that Defendants Willison and Charoen were expecting a decision in the Underlying Lawsuit.  (Id.)  Matthew Pietsch stated that he spoke with Plaintiff's Counsel, Richard Miller, and that Mr. Miller agreed to continue the hearing for "two to three" weeks.  (Id.)  Defendant Willison was copied on the letter.  (Id.)

On April 22, 2011, the Court granted Defendants' request and the hearing on Plaintiff's Motion for Summary Judgment was continued for a third time until June 24, 2011 at 10:00 a.m. (Minute Entry, April 22, 2011, (Doc. 29).)  Defendants were given

13

until May 20, 2011 to file an Opposition to Plaintiff's Motion for Summary Judgment. (Id.)

On May 10, 2011, Defendants' Attorney Matthew Pietsch filed a MOTION TO WITHDRAW AS COUNSEL OF RECORD (Doc. 33). According to the motion, Attorney Matthew Pietsch was discharged by the Defendants. (Motion to Withdraw as Counsel, filed May 10, 2011, Declaration of Matthew Pietsch at ¶ 4 (Doc. 33).) At the hearing on June 24, 2011 Defendants acknowledged that they discharged Mr. Pietsch because they were unable to pay for his representation. The Defendants' elected to proceed *pro se*.

On May 17, 2011, the Magistrate Judge granted the MOTION TO WITHDRAW AS COUNSEL OF RECORD. (Minutes of Hearing on May 17, 2011 (Doc. 38).) On May 19, 2011, the Magistrate Judge issued a written order memorializing his oral ruling on May 17, 2011. (Order Granting Motion to Withdraw as Counsel of Record, filed May 19 (Doc. 41).) The Magistrate Judge's Order, which was served on Defendants, stated that:

> Defendants are hereby given notice that the Plaintiff State Farm Fire & Casualty Company has filed a Motion for Summary Judgment that is set for hearing on June 24, 2011 at 10:00 a.m. before the Honorable Judge Helen Gillmor, and that Defendants' Opposition to said motion is due on or before May 20, 2011.

(Id. at 2.) The Defendants did not file an Opposition to Plaintiff's Motion for Summary Judgment on May 20, 2011.

On June 3, 2011, the Plaintiff filed "PLAINTIFF STATE FARM & CASUALTY COMPANY'S REPLY IN SUPPORT OF ITS MOTION FOR SUMMARY

JUDGMENT FILED NOVEMBER 22, 2010" (Doc. 42). Defendants were served with the Reply. In the Reply, the Plaintiff states that they did not receive an Opposition to their Motion for Summary Judgement. (<u>Id.</u>)

On June 9, 2011, nineteen days after the May 20, 2011 deadline for filing an Opposition to Plaintiff's Motion for Summary Judgment, the Court received an email from the Defendants. In the email, Defendants state that they attempted to file two motions on June 3, 2011 but that due to a computer virus they were never sent. The email requested leave to file these two motions by June 10, 2011 and a forty-five day continuance to respond to Plaintiff's Motion for Summary Judgment. On the same day, the Court granted Defendants' leave to make their filings and denied Defendants' request for a continuance. (Minute Order, filed June 9, 2010 (Doc. 43).) The Court noted that this Motion for Summary Judgment had been pending for over six months and that there would not be any further continuance in the matter. (<u>Id.</u>)

On June 10, 2011, Defendants filed "RESPONSE DECLARATORY JUDGMENT; SUMMONS; REQUEST CONTINUANCE; CHANGE OF ATTORNEY - PER SE [sic]" (hereafter "Defendants' Motion to Continue") (Doc. 44). The Defendants' Motion to Continue requests a continuance on Plaintiff's Motion for Summary Judgement and does not raise any

substantive opposition to Plaintiff's Motion for Summary Judgment.

Plaintiff's Motion for Summary Judgement, filed on November 22, 2010, has been pending for over seven months. During that time, the Court has continued the motion three times. At some time prior to May 10, 2011, Defendants elected to discharge their attorney and proceed *pro se*. Having knowledge that their attorney would no longer be working on the case, Defendants failed to file an Opposition to Plaintiff's Motion for Summary Judgment by the May 20, 2011 deadline.

Per the Defendants' request on June 9, 2011, the Defendants' were given the opportunity to file an Opposition to Plaintiff's Motion for Summary Judgment twenty days after the deadline. The Defendants failed to do so. The Defendants, instead, filed a motion to continue.

The Defendants have not demonstrated diligence in opposing Plaintiff's Motion for Summary Judgment. The first factor weighs in favor of denying Defendants' motion to continue.

**(2) Usefulness of the Continuance**

The Court must consider whether granting a continuance would serve "a useful purpose." <u>Armant v. Marquez</u>, 772 F.2d 552, 557 (9th Cir. 1985). Typically, a continuance would be useful if it would permit the party to discover evidence that would give rise to disputed issues of material fact. <u>See</u> Fed. R. Civ. P. 56(d);

<u>United States v. Crane</u>, 2009 U.S. Dist. LEXIS 30348, at *5 (D. Or. Apr. 7, 2009). At the hearing on June 24, 2011, Defendants had an opportunity to explain how a further continuance on the Plaintiff's Motion for Summary Judgment would be useful. While the Defendants were allowed to address the Court for forty minutes, Defendants did not show how a continuance would impact the merits of Plaintiff's Motion for Summary Judgment. There is no indication that granting Defendants' motion for a continuance would accomplishing anything other than extend an already protracted hearing. The second factor weighs in favor of denying Defendants' motion to continue.

**(3) Inconvenience**

The third factor considered by the Court is whether the continuance would inconvenience the non-moving party and the court. <u>Flynt</u>, 756 F.2d at 1360. The Plaintiff's Motion for Summary Judgment has been pending for over seven months and the lawsuit for over one and half years. The Plaintiff has already agreed to three continuances. The Plaintiff, however, wants its day in court. Plaintiff is defending the Defendants in the Underlying Lawsuit. Plaintiff seeks a declaration from the Court regarding its duty to defend and indemnify the Defendants. Continuing the Motion for Summary Judgment after the motion has been pending for over seven months is unfair to the Plaintiff.

This factor weighs in favor of denying Defendants' motion to continue.

**(4) Prejudice**

The party seeking a continuance must demonstrate that they would suffer prejudice if the continuance was denied. <u>Flynt</u>, 756 F.2d at 1360. Of the four factors, potential prejudice is the most important. <u>United States v. Mejia</u>, 69 F.3d 309, 316 (9th Cir. 1995).

At the hearing on June 24, 2011, the Defendants did not raise any viable argument as to how being required to oppose the Plaintiff's Motion for Summary Judgment would prejudice them. Defendants have had 18 months to develop a defense to Plaintiff's complaint, and seven months to oppose the Plaintiff's Motion for Summary Judgement. After May 10, 2011 when the Defendants had decided to discharge their attorney, the Defendants had time to develop an opposition to Plaintiff's Motion for Summary Judgment. At the hearing on June 24, 2011, Defendants were fully heard regarding their arguments against Plaintiff's Motion for Summary Judgment. The Defendants have not incurred any prejudice being required to proceed with the Plaintiff's Motion for Summary Judgment and any conceivable prejudice that they may have incurred is attributable to their own inaction.

The Defendants' have been given sufficient time and
opportunity to file an Opposition to Plaintiff's Motion for
Summary Judgment.  Defendant's Motion to Continue Plaintiffs
Motion for Summary Judgment is **DENIED**.


## II.  PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT IS GRANTED

Plaintiff moves, pursuant to Federal Rule of Civil Procedure
56 and the Declaratory Judgment Act, 29 U.S.C. § 2201 for a
declaratory judgment that the Plaintiff owes no duty to defend or
indemnify the Defendants in the Underlying Lawsuit.

### A.  The Court Has Discretionary Jurisdiction Over Plaintiffs' Declaratory Relief Action

The Court must exercise its prudential discretion to decide
if declaratory relief is appropriate.  <u>Principal Life Ins. Co. v.
Robinson</u>, 394 F.3d 665, 672 (9th Cir. 2005).  The Declaratory
Judgment Act is "deliberately cast in terms of permissive, rather
than mandatory, authority."  <u>Gov't Emp. Ins. Co. v. Dizol</u>, 133
F.3d 1220, 1222 (9th Cir. 1998).  The Declaratory Judgment Act
conveys jurisdiction on the Court "to make a declaration of
rights; it did not impose a duty to do so."  <u>Public Affairs
Assoc. v. Rickover</u>, 369 U.S. 111, 112 (1962).  The Court retains
broad discretion to determine, in light of prudential
considerations, whether maintaining jurisdiction over the
declaratory action is appropriate.  <u>Dizol</u>, 133 F.3d at 1223.

In <u>Dizol</u>, the Ninth Circuit Court of Appeals held that the

factors set forth in <u>Brillhart v. Excess Ins. Co. of Am.</u>, 316 U.S. 491 (1942) are the "philosophic touchstone for the district court" in deciding whether to assume jurisdiction in an action for declaratory relief. <u>Dizol</u>, 133 F.3d at 1225. In exercising its prudential discretion, the Court considers whether retaining jurisdiction would:

> (1) involve the needless determination of state law issues; (2) encourage the filing of declaratory actions as a means of forum shopping; (3) risk duplicative litigation; (4) resolve all aspects of the controversy in a single proceeding; (5) serve a useful purpose in clarifying the legal relations at issue; (6) permit one party to obtain an unjust *res judicata* advantage; (7) risk entangling federal and state court systems; or (8) jeopardize the convenience of the parties.

<u>Allstate Ins. Co. v. Herron</u>, 634 F.3d 1101, 1107-08 (9th Cir. 2011). At the core of these prudential considerations is an assessment of "how judicial economy, comity and federalism are affected in a given case." <u>Dizol</u>, 133 F.3d at 1226.

The factors in this case weigh in favor of the Court exercising its discretionary jurisdiction over the Plaintiff's declaratory judgment action.

### 1. Exercising jurisdiction does not involve needless determination of state law

The first prudential consideration focuses on whether exercising jurisdiction over the declaratory action deals in "unsettled issues of state law[.]" <u>Allstate Ins. Co. v. Davis</u>, 430 F. Supp. 2d 1112, 1120 (D. Haw. 2006) (quoting <u>Nat'l Chiropractic Mut. Ins. Co. v. Doe</u>, 23 F. Supp. 2d 1109, 1118 (D.

20

Alaska 1998)).  In a diversity action, Hawaii insurance law governs.  Cont'l Cas. Co. v. Robsac Indus., 947 F.2d 1367, 1371 (9th Cir. 1991), overruled in part on other grounds by Dizol, 133 F.3d at 1227.  Insurance law is "an area that Congress has expressly left to the states."  Id.  When an issue concerning state law is the subject of a parallel state proceeding or involves complicated and unsettled areas of state law, district courts should avoid exercising declaratory judgment jurisdiction. TIG Ins. Co. v. Haseko Homes, Inc., 2011 U.S. Dist. LEXIS 8084, at *34 (D. Haw. Jan. 26, 2011) ("When the sole basis for federal jurisdiction is diversity of citizenship, the federal interest is at its nadir and the Brillhart policy of avoiding unnecessary declarations of state law is especially strong." (quotations omitted) (quoting Robsac, 947 F.2d at 1371)).

In this case, however, there is no unsettled state law issue in dispute.  The issues presented in the Plaintiff's Complaint implicate well-settled areas of Hawaii state law already considered by the Ninth Circuit Court of Appeals and by several judges in this Court.  The Court will not need to interpret or disturb Hawaii state law in determining the scope of the Homeowners and Renters Insurance Policies.  The first factor, therefore, weighs in favor of exercising jurisdiction over the declaratory action.

### 2. Exercising jurisdiction does not encourage forum shopping

The Court discourages forum shopping and "generally decline[s] to entertain reactive declaratory actions." <u>Dizol</u>, 133 F.3d at 1225; see <u>Robsac</u>, 947 F.2d 1367, 1371 ("[I]f a declaratory judgment suit is defensive or reactive, that would justify a court's decision not to exercise jurisdiction."). Forum shopping occurs when the insurer files a declaratory action in federal court "to see if it might fare better in federal court at the same time the insurer is engaged in a state court action." <u>Am. Cas. Co. v. Krieger</u>, 181 F.3d 1113, 1119 (9th Cir. 1999).

There is no indication that the Plaintiff is engaged in forum shopping here. Defendants tendered the defense of the Underlying Lawsuit to the Plaintiff. Plaintiff elected to defend the Defendant subject to a reservation of rights. The Underlying Lawsuit does not include the issue of the Homeowners and Renter Insurance Policy coverage. At issue, therefore, is not the merits of the Underlying Lawsuit but whether the Plaintiff has a duty to defend or indemnify the Defendants. There is no evidence or allegation that the Plaintiff is forum shopping, nor is there any indication that exercising jurisdiction over this declaratory action will encourage further forum shopping. This second factor weighs in favor of exercising jurisdiction over the declaratory action.

### 3. Exercising jurisdiction does not risk duplicative litigation

The Court must avoid duplicative litigation. Herron, 634 F.3d at 1107-08. Conservation of judicial resources is the underlying principle behind this factor. Brillhart, 316 U.S. at 495 ("Ordinarily it would be uneconomical as well as vexatious for a federal court to proceed in a declaratory judgment suit where another suit is pending in a state court presenting the same issues, not governed by federal law, between the same parties."). When a declaratory action involves the same parties and same state law issues as a pending action in state court, the declaratory action is duplicative and should not be entertained. Wilton v. Seven Falls Co., 515 U.S. 277, 283 (1995).

Here, the issue before the Court is only tangentially related to the Underlying Lawsuit. The Underlying Lawsuit deals with whether the Defendants engaged in a scheme to divert monies in the construction of three homes on the island of Maui in the State of Hawaii. In this action, the Court need only consider the coverage of the Homeowners and Renters Insurance Polices. The decision here will not disturb or affect any findings of fact related to the Underlying Lawsuit. There is no risk of duplicative fact-finding. This third factor weighs in favor of exercising jurisdiction over the declaratory action.

### 4. Declaratory adjudication resolves all aspects of the insurance controversy in a single proceeding

The fourth prudential consideration is whether the declaratory action will settle all aspects of the case. Dizol, 133 F.3d at 1225. "As a matter of judicial economy, a district court should not entertain a declaratory action when the result would be to try a particular controversy piecemeal, or to try particular issues without settling the entire controversy." Stewart Title Co. v. Investors Funding Corp., 2010 U.S. Dist. LEXIS 46334, at *18-19 (D. Haw. May 11, 2010) (citing Dizol, 133 F.3d at 1225 n.5).

The issue before the Court is a simple one: whether the Plaintiff is required to defend or indemnify the Defendants in the Underlying Lawsuit pursuant to the Homeowners and Renters Insurance Policies. Resolution of this question of law will completely resolve the coverage issue between the Plaintiff and the Defendants. The fourth factor, therefore, weighs in favor of exercising jurisdiction over the declaratory action.

### 5. Declaratory adjudication clarifies the legal relationship between the parties

The Court may consider whether "judgment will serve a useful purpose in clarifying and settling the legal relations in issue." Dizol, 133 F.3d at 1225. The resolution of this action would, by virtue of the nature of the controversy, tell the parties what obligations and/or rights they have under the Homeowners and

Renters Insurance Policies.  This factor weighs in favor of exercising jurisdiction.

> **6. & 7.  Declaratory adjudication has no *res judicata* affect on the Underlying Lawsuit and there is no risk of entangling federal and state court systems**

This Court's decision on the Plaintiff's duty to defend or indemnify the Defendants should have no *res judicata* effect on a state court's determination of Defendants liability in the Underlying Lawsuit.  A different type of liability is at issue in each case and "there is no reason to believe this Court's legal and factual findings would implicate issues raised in state court."  <u>Gemini Ins. Co. v. Clever Constr., Inc.</u>, 2009 U.S. Dist. LEXIS 97768, at *25-26 (D. Haw. Oct. 21, 2009).  Exercising jurisdiction in this case would, therefore, entail no additional entanglement between federal and state courts above that which is customary in federal courts sitting in diversity.  <u>Id.</u>  The sixth and seventh factors weigh in favor of exercising jurisdiction of the declaratory judgement action.

> **8.  Declaratory adjudication would not jeopardize the convenience of the parties**

The final prudential consideration the Court considers in determining whether to exercise jurisdiction is "the convenience of the parties[.]"  <u>Dizol</u>, 133 F.3d at 1225 n.5.  The Defendants reside in the State of Hawaii.  The Plaintiff seeks this declaratory action in the United States District Court for the

District of Hawaii.  There is no indication that the Defendants
are inconvenienced by litigating this matter in their local
district court.  The eighth factor, therefore, weighs in favor of
exercising jurisdiction over the declaratory judgement action.

All eight prudential considerations the Court examines in
determining whether to exercise jurisdiction over this
declaratory judgment action weigh in favor of exercising
jurisdiction.  The Court, therefore, uses its discretion under
the Declaratory Judgment Act to exercise jurisdiction over
Plaintiff's request for declaratory relief.

**B.    <u>There Is No Coverage Under Either the Renters Insurance
       Policy or the Homeowners Insurance Policy</u>**

The Defendants did not file an Opposition or a Separate and
Concise Statement of Undisputed / Disputed Facts to the
Plaintiff's Motion for Summary Judgment.  Pursuant to Federal
Rule of Civil Procedure 56(e):

> If a party fails to properly support an assertion of
> fact or fails to properly address another party's
> assertion of fact as required by Rule 56(c), the court
> may:  . . . grant summary judgment if the motion and
> supporting materials–including the facts considered
> undisputed–show that the movant is entitled to it[.]

Fed. R. Civ. P. 56(e).  Here, the Court is interpreting the scope
of coverage of two insurance policies that both parties agree are
at issue.  This case involves the interpretation of two
contracts.  During the hearing on June 24, 2011, the parties did

not raise any material issues of disputed fact or dispute the validity of the Homeowners Insurance and Renters Insurance Policies. At the hearing, the Defendants were given an opportunity to challenge Plaintiff's Motion for Summary Judgement at oral argument. Pursuant to Rule 56(e) the merits of Plaintiff's Motion for Summary Judgment is considered even though there is no written Opposition by the Defendants.

The Homeowners Insurance and Renters Insurance Policies contain an identical personal liability coverage clause. The Homeowners Insurance and Renters Insurance Policies state:

COVERAGE L – PERSONAL LIABILITY

If a claim is made or a suit is brought against insured for damages because of **bodily injury** or **property damage** to which this coverage applies, cause by an **occurrence**, we will:

1.    pay up to our limit of liability for the damages for which the insured is legally liable; and

2.    provide a defense at our expense by counsel of our choice. We may make any investigation and settle any claim or suit that we decide is appropriate. Our obligation to defend any claim or suit ends when the amount we pay for damages to effect settlement or satisfy a judgment resulting in the occurrence equals our limit of liability.

(Homeowners Insurance Policy at 15; Renters Insurance Policy at 12.)

## 1. The Renters Insurance Policy Does Not Cover the Period of the Alleged Injury Claimed in the Underlying Lawsuit

Defendants are not entitled to coverage under the Renters Insurance Policy.  The Underlying Lawsuit was filed on April 14, 2009 and the Renters Insurance Policy went into effect on October 16, 2009 for a period covering October 16, 2009 through October 16, 2010.  The Underlying Lawsuits alleges causes of action that occurred before the Renters Insurance Policy existed.  The Hawaii Supreme Court has held that in determining when coverage exists, "[t]he trigger period beings with the inception fo the injury and ends when the injury ceases." Sentinel Ins. Co. v. First Ins. Co. of Haw., Ltd., 875 P.2d 894, 915 (Haw. 1994); accord Am. Nat. Fire Ins. Co. v. B & L Trucking and Const. Co., Inc., 951 P.2d 250, 254 (Wash. 1998) (homeowners insurance coverage applies to damage that occurred during the policy period).  The alleged damage in the Underlying Lawsuit all occurred before 2007.  The Renters Insurance Policy was not in effect until 2009.  The Renters Insurance Policy, therefore, does not cover the allegations in the Underlying Lawsuit.  The Renters Insurance Policy does not create a duty to defend or indemnify the Defendants in the Underlying Lawsuit.

While it is clear the Renters Insurance Policy does not cover the Defendants' potential liability in the Underlying Lawsuit, in an abundance of caution the Renters Insurance Policy

is evaluated with the Homeowners Insurance Policy.  Both Policies contain identical liability coverage language.  All analysis applicable to one is applicable to the other.

## 2. The Insurance Policies do not provide coverage for the claims in the Underlying Lawsuit

Plaintiff argues that the Homeowners and Renters Insurance Policies do not cover the claims alleged in the Underlying Lawsuit because: (i) the Underlying Lawsuit does not allege damage caused by an "occurrence" as required by the Policies; (ii) the Underlying Lawsuit does not allege bodily injury or property damage as required by the Policies; and (iii) the Policies do not cover any liability associated with business pursuits.

### (i) The Underlying Lawsuit does not allege damage caused by an "Occurrence"

The Homeowners Insurance and Renters Insurance Policies provide liability coverage for "bodily injury or property damage ... caused by an occurrence[.]"  (Homeowners Insurance Policy at 15; Renters Insurance Policy 12.)  In the Section titled "Definitions" of both Policies, they define "occurrence" as:

[A]n accident, including exposure to conditions, which results in:

    a. bodily injury; or
    b. property damage,

during the policy period.  Repeated continuous exposure to the same general conditions is considered one occurrence.

(Homeowners Insurance Policy at 2; Renters Insurance Policy 2.)

Plaintiff argues that the Underlying Lawsuit alleges causes of action against the Defendants that were not caused by an "occurrence" as defined by the Policies. The Underlying Lawsuit alleges ten causes of action: (1) Breach of Fiduciary Duty; (2) Constructive Fraud; (3) Promissory Fraud; (4) Violation of the Unfair Trade Practices Act; (5) Constructive Trust; (6) Accounting; (7) Conversion; (8) Breach of Contract; (9) Violations of the Racketeer Influenced and Corrupt Organizations Act (hereafter "RICO"); and (10) Negligence. (Underlying Complaint at ¶¶ 34-69.)

### *Counts 2, 3, 4, 7, and 9*

Counts 2, 3, 4, 7, and 9 allege intentional conduct by the Defendants. Intentional conduct does not constitute an "occurrence" under Hawaii insurance law. AIG Haw. Ins. Co. v. Estate of Caraang, 851 P.2d 321, 329 (Haw. 1993) ("[I]n order for the insurer to owe a duty to defend or indemnify, the injury cannot be the expected or reasonably foreseeable result of the insured's own intentional acts or omissions."); Burlington, 383 F.3d at 946 (same). The Policies, therefore, do not provide coverage for Counts 2, 3, 4, 7, and 9 of the Underlying Lawsuit.

### *Counts 1, 5, 6, and 8*

Counts 1, 5, 6, and 8 allege various causes of action arising from an alleged contract between the Defendants and the

Underlying Lawsuit Plaintiffs to construct three homes on the island of Maui.  It is well-settled law that "where an underlying complaint alleges an intentional breach of contract, there is no occurrence that triggers an insurer's duty to defend[.]" Burlington, 383 F.3d at 946; Hawaiian Holiday Macadamia Nut Co. v. Indus. Indem. Co., 872 P.2d 230, 234-235 (Haw. 1994); Grp. Builders, Inc. v. Admiral Ins. Co., 231 P.3d 67, 72-73 (Haw. Ct. App. 2010).

In Hawaiian Holiday, the Hawaii Supreme Court interpreted the meaning of "occurrence" in the context of a coverage dispute. 872 P.2d at 233-35.  In Hawaiian Holiday, the underlying lawsuit alleged causes of action for breach of contract and fraud.  Id. The Hawaii Supreme Court held that a breach of contract is not an occurrence as contemplated by Hawaii insurance law because when one is charged with meeting the terms of a contract, damage caused by failure to meet those terms is a reasonably foreseeable outcome.  Id. (quoting AIG Haw. Ins., 851 P.2d at 329).  The Court reasoned that "occurrence" as defined in a homeowners insurance policy deals with accidental conduct not the reasonably foreseeable consequences of one's decision to contract.  Hawaiian Holiday, 872 P.2d at 233-35.  The Hawaii Supreme Court held that the term "occurrence" as used in homeowners insurance policies does not pertain to contractual disputes.  Id.  Insurers are not

required under a homeowners insurance policy to defend claims against an insured for breach of contract. Id.

Counts 1, 5, 6, and 8 all derive from a contract dispute between the Defendants and the Underlying Lawsuit Plaintiffs to build three homes in on the island of Maui. As contract-based causes of action, any alleged injury suffered by the Underlying Lawsuit Plaintiffs would not have been caused by an "occurrence" as defined by the Homeowners Insurance or Renters Insurance Policies. Plaintiffs, therefore, do not owe a duty to defend or indemnify the Defendants for Counts 1, 5, 6, and 8 as alleged in the Underlying Lawsuit.

### *Count 10*

Count 10, the last cause of action, is titled "Negligence Against Defendants Willison, HCG, Vigneux, Nelson and Charoen". (Underlying Complaint at p.15, ln. 10.) Count 10 states:

> 67. As a consequence of the terms of the Contract and oral construction contract, Defendants owed Plaintiffs a duty of care to (1) fully and properly account to Plaintiffs for their construction funds; and (2) properly manage the construction of the Greulich Property and the Greulich / Schwartz residence, the Geulich Property III.

> 68. Defendants' wrongful acts as described herein constituted a breach of Defendants' duty of care owed to Plaintiffs.

> 69. As a proximate cause of the breach of duty of care, Plaintiffs have suffered general and special damages in the sum of no less than $1,000,000 according to proof at trial.

(Id. at ¶¶ 67-69.)

The Hawaii Supreme Court has held that causes of action that "sound in negligence" can be, under certain circumstances, considered occurrences for the purposes of insurance coverage. Hawaiian Holiday, 872 P.2d at 235. The Hawaii Supreme Court, however, cautions of the need to examine carefully a complaint to "ensure that plaintiffs could not, through artful pleading, bootstrap the availability of insurance coverage under an insured defendant's policy by purporting to state a claim for negligence based on facts that, in reality, reflected manifestly intentional, rather than negligent conduct." Dairy Rd. Partners, 992 P.2d at 112. When the underlying lawsuit alleges facts that clearly indicate conduct not covered by an insurance policy, the Court does not accept "conclusory assertions contained in the complaint regarding the legal significance of those facts (such as that the facts as alleged demonstrate "negligent" rather than "intentional" conduct)[.]" Id.

Count 10 expressly states "[a]s a consequence of the terms of the Contract and oral construction contract, Defendants owed Plaintiffs a duty of care[.]" Count 10 asserts a negligence action based on contractual obligations. Recently, in Group Builders, Inc. v. Admiral Ins. Co., the Hawaii Intermediate Court of Appeals addressed whether tort-claims that derive from a breach of contract claim constitute "occurrences" for the

purposes of insurance coverage. 231 P.3d at 73-74. In <u>Group</u>
<u>Builders</u>, the underlying lawsuit involved the faulty construction
of a hotel and alleged several causes of action including breach
of contract and negligence. <u>Id.</u> The Group Builders Court
evaluated the underlying complaint and concluded that while an
allegation of negligence was levied against the insured, the
negligence claim was derivative of the contract to construct a
hotel. <u>Id.</u> The Hawaii Intermediate Court of Appeals held that
tort-based claims that are derivative of a breach of contract
claim are not occurrences and, therefore, not subject to
coverage. <u>Id.</u>

Here, <u>Group Builders</u> is dispositive. Count 10 states a
negligence claim arising out of an alleged breach of contract to
construct three homes on the island of Maui. Any negligence
assert against the Defendants involves negligence in the
performance of a contract. This form of negligence is not an
occurrence as defined by Hawaii insurance law or the Homeowners
Insurance and Renters Insurance Policies. Plaintiff, therefore,
does not have a duty to defend or indemnify the Defendants for
Count 10 in the Underlying Lawsuit.

In summary, all Counts in the Underlying Lawsuit allege
causes of action that are not "occurrences" as defined by the
Polices and Hawaii law. The Homeowners Insurance Policy does not

cover the defense or indemnification of the Defendants in the
Underlying Lawsuit.

> **(ii) The Underlying Lawsuit does not allege bodily
> injury or property damage as defined by the
> Policies**

Alternatively, if there was an "occurrence" as contemplated
by Hawaii law and the Homeowners Insurance and Renters Insurance
Policies, the damages sought by the Underlying Lawsuit are not
covered by the Policies.  The Policies provide liability coverage
for "bodily injury or property damage[.]"  (Homeowners Insurance
Policy at 15; Renters Insurance Policy at 12.)  Both Policies
define "bodily injury" as:

> [P]hysical injury, sickness, or disease to a person.
> This includes requires care, loss of services and death
> resulting therefrom.
>
> Bodily injury does not include:
>
> > a.   any of the following which are communicable:
> > disease, bacteria, parasite, virus, or other
> > organism, any of which are transmitted by any
> > insured to any other person;
> >
> > b.   the exposure to any such diseases, bacteria,
> > parasite, virus of other organism by any
> > insured to any other person; or
> >
> > c.   emotional distress, mental anguish,
> > humiliation, mental distress, mental injury,
> > or any similar injury unless it arises out of
> > actual physical injury to some person.

(Homeowners Insurance Policy at 1; Renters Insurance Policy at
1.)  Both of the Policies define "property damage" as "physical
damage to or destruction of tangible property, including loss of

use of this property.  Theft or conversion of property by any insured is not property damage." (Homeowners Insurance Policy at 2; Renters Insurance Policy at 2.)

There is no allegation of bodily injury in the Underlying Lawsuit.  At issue, therefore, is whether property damage is alleged in the Underlying Lawsuit.  An underlying complaint alleges "property damage" when the complaint asserts facts showing a deprivation of a tangible property through physical damage.  See Hawaiian Holiday, 872 P.2d at 234 (destruction of macadamia nut seedlings considered property damage).  Damage to a property that merely impacts the value of property but causes no physical damage is not considered property damage for insurance purposes.  See Hawaiian Ins. & Guar. Co. v. Blair, Ltd., 726 P.2d 1310, 1314-15 (Haw. Ct. App. 1986) ("'[D]iminution in value' does not constitute 'loss of use' within the meaning of the Policy provision.").

The Underlying Lawsuit alleges that the Defendants overcharged and misdirected funds in the construction of three homes on the island of Maui.  The Underlying Lawsuit seeks recovery of monies allegedly lost to the Defendants.  The Underlying Lawsuit, however, makes no allegation of property damage.  The damages alleged are economic in nature and deal with interchange of money between the Underlying Lawsuit Plaintiffs and the Defendants for the construction of three homes.  Economic

damages, i.e. damages that stem from a "benefit of the bargain"
are not property damages. <u>Allstate Ins. Co. v. Chaney</u>, 804 F.
Supp. 1219, 1222 (N.D. Cal. 1992). There is no allegation of
property damage or bodily injury in the Underlying Lawsuit. The
Plaintiff, therefore, has no duty to defend or indemnify the
Defendants.

### (ii) The Polices do not cover any liability associated with business pursuits

The Homeowners Insurance and Renters Insurance Policies
state that personal liability coverage does not apply to
liability "assumed under any unwritten contract or agreement, or
by contract or agreement in connection with a **business** of the
**insured**[.]" (hereafter "Business Pursuits Exclusion").
(Homeowners Insurance Policy at 17; Renters Insurance Policy at
15.) The Policies define "business" as "a trade, profession or
occupation." (<u>Id.</u> at 1.)

"[T]he phrase 'business pursuits' as used in homeowners'
policies refers to activities which are conducted on a regular or
continuous basis, for the purpose of earning income, profit, or
as a means of livelihood." <u>Armed Forces Ins. Exch. v.
Transamerica Ins. Co.</u>, 966 P.2d 1099, 1105-06 (Haw. Ct. App.
1998).

The Underlying Lawsuit alleges that Defendant Willison,
acting through his company Hawaiian Construction Group, Inc.,
contracted with the Underlying Lawsuit Plaintiffs to construct

three homes in on the island of Maui.  The Underlying Lawsuit
states that Defendant Willison was the principle officer and sole
stock owner of Hawaiian Construction Group, Inc. and that
Defendant Charoen was the "Bookkeeper/Accountant; responsible for
writing checks and keeping the books concerning the construction
of homes[.]" (Underlying Complaint at ¶¶ 3-5.)

The Underlying Lawsuit alleges conduct by Defendants that
was "conducted on a regular or continuous basis, for the purpose
of earning income[.]" Armed Forces, 966 P.2d at 1105.  The
Underlying Lawsuit alleges that Defendants, in the scope of their
business, contracted to build homes for the Underlying Lawsuit
Plaintiffs.  The Business Pursuits Exclusion of the Homeowners
Insurance and Renters Insurance Policies expressly limit
liability coverage for any "contract or agreement in connection
with a business of the insured[.]" (Homeowners Insurance Policy
at 17; Renters Insurance Policy 15.)  The Plaintiff has no duty
to defend or indemnify the Defendants in the Underlying Lawsuit
because the Underlying Lawsuit deals exclusively with alleged
damages and injuries arising out of the Defendants' business
pursuits.


PLAINTIFF STATE FARM FIRE & CASUALTY COMPANY'S MOTION FOR
SUMMARY JUDGMENT is **GRANTED**.  Plaintiff owes no duty under the

Renters Insurance Policy or Homeowners Insurance Policy to defend or indemnify the Defendants in the Underlying Lawsuit.

## III. DEFENDANTS' COUNTERCLAIM IS DISMISSED AS MOOT

On March 9, 2010, Defendants filed a Counterclaim against the Plaintiff.  (Counterclaim (Doc. 9).)  The Counterclaim seeks a declaratory judgment on behalf of the Defendants that Plaintiff owes a duty to defend and indemnify the Defendants in the Underlying Lawsuit.  The granting of Plaintiff's Motion for Summary Judgment renders the issues raised by Defendants' Counterclaim moot.  The Counterclaim is, therefore, **DISMISSED AS MOOT.**

### CONCLUSION

(1)  Plaintiff's Motion for Summary Judgment has been pending for over seven months and the Defendants have had ample opportunity to prepare an opposition. Defendants' Motion to Continue (Doc. 44), filed on June 10, 2011 is **DENIED.**

(2)  Plaintiff owes no duty under the Renters Insurance Policy or Homeowners Insurance Policy to defend or indemnify the Defendants in the Underlying Lawsuit. Defendants' potential liability in the Underlying Lawsuit is not covered by the Homeowners Insurance and

Renters Insurance Policies. PLAINTIFF STATE FARM FIRE & CASUALTY COMPANY'S MOTION FOR SUMMARY JUDGMENT (Doc. 18), filed on November 22, 2010, is **GRANTED.**

(3)   Defendants' Counterclaim is **DISMISSED AS MOOT.**

(4)   The Clerk of Court is directed to enter judgment in favor of the Plaintiff and to close this case.


IT IS SO ORDERED.

DATED June 28, 2011, Honolulu, Hawaii.



                                    /S/ Helen Gillmor
                        _____
                        Helen Gillmor
                        United States District Judge





State Farm Fire & Casualty Co. v. Willison, et al; Civ. No. 10-00052 HG-BMK; **ORDER GRANTING PLAINTIFF STATE FARMS FIRE & CASUALTY COMPANY'S MOTION FOR SUMMARY JUDGEMENT (DOC. 18) AND DISMISSING DEFENDANTS' COUNTERCLAIM (DOC.9) AS MOOT.**